UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARLOS MENDEZ, An Individual,<br><br>　　　　　　　　　　　Plaintiff,<br><br>v.<br><br>United States of America,<br><br>　　　　　　　　　　　Defendant. | Case No.: 16-CV-2486-AJB-JLB<br><br>**ORDER:**<br><br>**(1) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, (Doc. No. 6); AND**<br><br>**(2) GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, (Doc. No. 8)** |

　　　Presently before the Court are Plaintiff Carlos Mendez's ("Mendez") motion for summary judgment and Defendant United States of America's ("United States") cross motion for summary judgment. (Doc. Nos. 6, 8.) The motions are fully briefed. Having reviewed the parties' arguments in light of controlling legal authority, and pursuant to Local Civil Rule 7.1.d.1, the Court finds the matters suitable for decision without oral argument. For the reasons set forth below, the Court **DENIES** Mendez's motion and **GRANTS** the United States' motion.

## BACKGROUND

This is an appeal from the denial of benefits under the Traumatic Servicemembers' Group Life Insurance Program ("TSGLI"). Mendez claimed entitlement to these benefits due to an injury to his left shoulder. On January 30, 2006, Mendez was lifting weights on an incline bench press at FOB Zamboanga, Philippines. (AR 24, 37.)[1] A rusty pin in the equipment broke, causing a 315-pound weight to fall on Mendez's chest. (AR 2, 58, 60–61.) Mendez immediately felt a tear and severe pain to his left shoulder area. (AR 58.) At that time, Mendez was a 25-year-old Navy Seal. (AR 21, 24–25.) An MRI taken in Manila, Philippines revealed a left pectoralis tendon rupture. (AR 24.)

On February 7, 2006, Mendez was medavac'd to Balboa Naval Medical Center, San Diego, California, where a second MRI revealed a near complete left pectoralis major rupture through the musculotendinous junction with fiber retraction and 2 cm of residual tendon attached to the humerus. (AR 21.) Mendez was admitted to Balboa and underwent surgery there with Dr. Michael T. Mazurek on February 8, 2006, who successfully repaired the rupture. (AR 24, 27.) That day, Mendez was discharged from Balboa to the care of his now-ex-wife, Michelle Mirza Nelson. (AR 96, 156, 283.)

Upon discharge, Mendez used an ultra-sling immobilizer on his left side and was under strict orders to remain immobilized. (AR 30.) In his postoperative plan, Dr. Mazurek ordered Mendez to do passive external range of motion rotations for six weeks postsurgery. (AR 27.) The plan provided that six weeks postsurgery, Mendez could do "active-active assist with more range of motion as well as gentle strengthening[.]" (AR 27.) Mendez was ordered to not do any internal rotation strengthening for at least three to four months and

---

[1] The parties lodged a hard copy of the administrative record with the Court. (*See* Doc. No. 5.) All citations to "AR" are to this record. On March 21, 2017, the parties lodged a hard copy of additional documents to supplement the administrative record. (*See* Doc. No. 10.) All citations to "SAR" are to these supplemental documents.

to not return to full activities until six to seven months postsurgery, depending on his ability.[2] (AR 27.)

The majority of Mendez's follow up visits were with Dr. Jadgchew. At his first visit on March 7, 2006, Dr. Jadgchew noted that Mendez was not to take his arm out of the sling for the first four weeks. (AR 27, 30, 31, 139.) Dr. Jadgchew also observed that Mendez's strength, range of motion, and stability were abnormal; Mendez's pain level was 5 out of 10; and Mendez still had major swelling. (AR 14, 31, 139.)

At a physical therapy appointment on April 4, 2006, Dr. Jadgchew noted that Mendez was to use range of motion as tolerated, begin active range of motion for the next four weeks, continue with modalities for swelling, pain, and muscle stimulation, and use the sling for an additional two weeks and thereafter as needed. (AR 32, AR 140.) Dr. Jadgchew observed that Mendez's strength and range of motion were still abnormal, his stability was normal, his pain level was 3 out of 10, and he had 25% functional level and minor swelling. (AR 17, 32, AR 140.)

Mendez had another physical therapy appointment with Dr. Jadgchew on May 2, 2006. (AR 18, 33, 141.) Dr. Jadgchew observed that Mendez was out of the sling, had a functional level of 50%, and while his strength was abnormal, his range of motion and stability were normal. (AR 141.) Dr. Jadgchew noted that Dr. Mazurek anticipated Mendez to make a full recovery around the six-month mark. (AR 18, 33, 141.) On June 10, 2006, Dr. Jadgchew noted that while Mendez had a "significant amount of atrophy to the left side," his functional level was 75%, his pain level was 1 out of 10, and he was making positive progress. (AR 19, 34.) Dr. Jadgchew deemed Mendez to be at 100% functional level on August 10, 2006. (AR 20, 35.)

Mendez submitted his first application for TSGLI benefits on or about May 14, 2012. (AR 1–13.) Joseph A. Buckner, Physician Assistant, completed Part B of the application

---

[2] It was noted, however, that Mendez "recovered sooner than expected." (AR 27.)

entitled Medical Professional's Statement on June 6, 2012, nearly 6.5 years after the traumatic event. (AR 6–13.) Buckner attested to the impact Mendez's shoulder injury had on him from January 30, 2006, through June 16, 2006. (AR 11–12.) Specifically, Buckner attested that Mendez was unable to independently perform three activities of daily living: bathing, dressing, and toileting. (AR 11–12.) Buckner asserted that Mendez "required direct hands on and stand by assistance to bathe the right side of his body and back"; "was unable to fully dress himself and needed direct hands on and stand by assistance to do so"; and "was unable to properly clean himself after a bowel movement" and "[r]equired direct hands on assistance." (AR 11–12.) Buckner based these opinions on his review of Mendez's medical records, not personal observation of Mendez's limitations. (AR 12–13.)

On June 18, 2012, Mendez's first application was denied. (AR 38.) In the letter informing him of this denial, it was simply stated that Mendez's "inability to perform ADLs due to other traumatic injury was not approved by your branch of service because medical documentation does not support your inability to perform ADLs for 30 days." (AR 42–44.)

Mendez sought reconsideration on July 1, 2012. (AR 58.) Mendez provided his original application, which he supplemented with statements from himself and others who witnessed the traumatic event. (AR 45–62.) The denial was upheld on September 4, 2012. (AR 69; *see* AR 66–68.) This denial again simply stated that Mendez's "medical documentation . . . is inconsistent with the program definition for . . . loss of two or more ADLs for 120 or more days." (AR 69.)

On April 25, 2014, Mendez submitted a second application for TSGLI benefits. (AR 72–87.) Buckner again completed Part B, this time asserting Mendez was unable to bathe, toilet, and dress independently for only a period of more than 60 days, but less than 120 days. (AR 80–87.) Mendez included additional material to support his application: new medical records, a statement from Lieutenant Commander Clayton M. Pendergrass, a statement from Terri Burns, RN, an updated statement from himself, and a statement from Nelson. (AR 88–141.) In his new statement, Mendez asserted he could not wash his back, and Nelson had to assist him in washing and drying places he could not reach; he had to

keep his left arm under his shirt, and Nelson assisted him with putting on his shirt, pants, socks, and shoes; and Nelson assisted him with putting on and removing his pants while toileting. (AR 89.) Nelson and Burns stated similarly. (AR 92, 96–99.)

Mendez's second application was denied on January 12, 2015. (AR 145–46.) It was again determined that "there is insufficient evidence to support the member's claim for loss of two or more ADLs for 30 or more consecutive days." (AR 145.) Mendez submitted an appeal of this decision on February 24, 2015. (AR 147–274.) This appeal included all the prior information and new evidence, including evidence that Mendez submitted a subsequent TSGLI claim relating to a nearly identical injury in 2007 that was approved. (AR 147–274.)

This appeal was denied on September 15, 2015. (AR 279.) This denial was based on the TSGLI Appeals Board finding that "the preponderance of evidence does not support that [] Mendez *required* assistance for two ADLs . . . ." (AR 279 (emphasis added).) This was because if he was able to perform an ADL with "accommodating equipment," he is considered able to independently perform the ADL. (AR 279.)

On September 16, 2015, Mendez submitted an application for correction of military record to provide an appeal to the Board for Correction of Naval Records ("BCNR"). (AR 280.) This application was denied on June 24, 2016. (AR 283–84.) The BCNR agreed with the TSGLI Appeals Board, finding that Mendez attested to being able to perform some aspects of the ADLs, but did not explain why he required assistance to complete the ADL. (AR 283–84.) The BCNR further noted there was "insufficient evidence explaining why [Mendez] couldn't perform those claimed ADLs with [his] uninjured arm and hand." (AR 284.) Finally, the BCNR acknowledged that Mendez had received TSGLI benefits for a similar injury that Mendez sustained in 2007. (AR 284.) However, the BCNR found that "too many potential variables exist to be able to reasonably rely upon another TSGLI claim as probative evidence despite the similar nature of the injuries." (AR 284.)

//

//

Mendez instituted the instant lawsuit on October 4, 2016, seeking judicial review of the denial of his 2006 TSGLI claim. (Doc. No. 1.)[3] Mendez filed his motion for summary judgment on February 16, 2017, (Doc. No. 6), and the United States filed its cross motion on March 17, 2017, (Doc. No. 8). The matter is fully briefed. (Doc. Nos. 11, 12.) This order follows.

## LEGAL STANDARDS

### I. Motion for Summary Judgment

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 if the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material when, under the governing substantive law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party. *Id.*

A party seeking summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. The moving party can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating the nonmoving party failed to establish an essential element of the nonmoving party's case on which the nonmoving party bears the burden of proving at trial. *Id.* at 322–23.

If the moving party carries its initial burden, the burden of production shifts to the nonmoving party to set forth facts showing a genuine issue of a disputed fact remains. *Id.* at 330. When ruling on a summary judgment motion, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

//

---

[3] For documents on the docket, the Court cites to the blue CM/ECF-generated document and page numbers located at the top of each page.

## II. Review of Agency Decisions

Title 38 U.S.C. § 1975 confers jurisdiction on district courts "to review decisions with regard to TSGLI claims." *Greenwood v. United States*, No. 16cv1754 DMS (DHB), 2017 WL 2445535, at *2 (S.D. Cal. June 6, 2017) (quoting *Fail v. United States*, No. 12-cv-01761-MSK-CBS, 2013 WL 5418169, at *2 (D. Colo. Sept. 27, 2013)). "Ordinarily when a federal statute creates a right to judicial review of an agency decision, but does not set forth the standard of review to be used in conducting such a review, the Court is to apply the familiar 'arbitrary and capricious' review dictated by the Administrative Procedures Act[.]" *Id.* (quoting *Fail*, 2013 WL 5418169, at *5).

Under the APA, a court will "set aside an agency's actions 'only if they are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *In re Big Thorne Project*, 857 F.3d 968, 973 (9th Cir. 2017) (quoting *Or. Nat. Res. Council Fund v. Goodman*, 505 F.3d 884, 889 (9th Cir. 2007)). In making this determination, "the reviewing court 'must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.' This inquiry must 'be searching and careful,' but 'the ultimate standard of review is a narrow one.'" *Marsh v. Or. Nat. Res. Council*, 490 U.S. 360, 378 (1989) (quoting *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971)). Agency actions will be found to be arbitrary and capricious

> if the agency has relied on factors which Congress had not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of the agency's expertise.

*Yakutat, Inc. v. Gutierrez*, 407 F.3d 1054, 1067 (9th Cir. 2005) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43 (1983)). "This standard of review is highly deferential, presuming the agency action to be valid and affirming the agency action if a reasonable basis exists for its decision." *Pac. Dawn LLC v. Pritzker*, 831

F.3d 1166, 1173–74 (9th Cir. 2016) (quoting *Pac. Coast Fed'n of Fishermen's Ass'ns v. Blank*, 693 F.3d 1084, 1091 (9th Cir. 2012)).

## DISCUSSION

Mendez argues that he is entitled to summary judgment in his favor because Defendant ignored the governing legal standard in 38 C.F.R. § 9.20 for determining whether a service member has suffered a qualifying loss and applied a much narrower standard in denying his claim. (Doc. No. 6-1 at 15–16.) He further asserts Defendant erred by failing to apply the proper standard of review. (*Id.* at 16–18.) Finally, Mendez argues Defendant ignored his evidence, and there is sufficient evidence to warrant the conclusion that he is entitled to TSGLI benefits. (*Id.* at 24.)[4]

In its cross motion and reply to Mendez's motion, Defendant asserts the denial of Mendez's application was not arbitrary and capricious. (Doc. No. 8-1 at 14–18; Doc. No. 12 at 2–4.) Finally, Defendant contends that even if Mendez's assertions have merit, the only remedy available is remand to the administrative body, not adjudication of his claim in the first instance. (Doc. No. 8-1 at 20–20.)

### I. *The Supplemental Administrative Record*

As an initial matter, Mendez argues the Court cannot consider any information contained in the supplemental administrative record because of its late disclosure. (Doc. No. 11 at 2.) Defendant contends contrarily. (Doc. No. 12 at 4–5.)

---

[4] Mendez contends Defendant failed to give him the benefit of the doubt as required by 38 U.S.C. § 5107. (Doc. No. 6-1 at 18–21.) Defendant argues that Mendez failed to make this assertion during the administrative proceedings and has thus waived the argument. (Doc. No. 8-1 at 18–19.) Even if the Court considered the argument on the merits, it is questionable whether the rule applied because, as the Navy pointed out, Mendez's evidence was silent on why or how he was unable to bathe and toilet with his right hand and accommodating equipment. (SAR 278E.) The benefit of the doubt rule applies only when there is an "approximate balance of positive and negative evidence . . . ." 38 U.S.C. § 5107(b). Here, there was none as to bathing and toileting. Furthermore, even if the rule applied, Mendez *was* given the benefit of the doubt. (SAR 278B, 278E.)

The Court agrees with Defendant. First, Mendez stipulated to the supplementation. "Because stipulations serve both judicial economy and the convenience of the parties, courts will enforce them absent indications of involuntary or uninformed consent." *CDN Inc. v. Kapes*, 197 F.3d 1256, 1258 (9th Cir. 1999). Second, because the documents were among those considered by the Navy during its decisional process, they are properly added to the administrative record. *Portland Audubon Soc'y v. Endangered Species Comm.*, 984 F.2d 1534, 1548 (9th Cir. 1993). Finally, Mendez "fails to explain how his [] appeal or his request for reconsideration would have been any different if he had the Memoranda identified above." *Greenwood*, 2017 WL 2445535, at *4.

## II.   The February 6, 2014, Email

Mendez argues that an email from Mary Koontz, Branch of Service Program Manager for Traumatic Injury SGLI and Family SGLI, illustrates that the United States' agencies have narrowed the scope of TSGLI benefits by relying on factors not contemplated by Congress. (Doc. No. 6-1 at 15–16.) In an email dated February 6, 2014, Koontz stated the following:

> The misinformation that 'all' injuries are covered is not correct. VA has clearly identified to each branch of service program manager that single limb injuries do not qualify unless there are extraneous circumstances, such as, an external fixator/use of wheelchair/bed bound, etc.
>
> BLUF: Torn ACLs, Achilles heel injuries, meniscuses, for single leg are most often not found eligible due to lack of medical documentation for activities of daily living (ADL) loss. Shoulders/wrists are the same; the VA's standpoint is that you have another limb to accommodate what needs to be done, at least on paper! The reality is the medical [*sic*] does not adequately document losses that a patient sustains outside an inpatient environment. 9 out of 10 times, once a patient 'begins' physical therapy, they are no longer eligible for ADL losses.

(AR 70.) The United States retorts that Mendez failed to carry his burden of establishing that he required, as opposed to received, assistance performing the ADLs. (Doc. No. 8-1 at 14–15.) Because the Navy articulated a rational connection between the facts and its conclusion, and in light of the vague, conclusory, and facially inconsistent evidence to the

contrary, Defendant asserts the Navy's decision easily passes muster under the arbitrary and capricious standard. (*Id.* at 16–18.)

The Court agrees with the United States. First, Koontz premises her email by stating the information is a "generic how-to for filing," not that it is a criterion considered when determining whether to grant or deny TSGLI benefits. (AR 70.) Second, the record does not support the position that Mendez's claim was denied simply because he suffered a single limb injury. *See infra* Discussion Section III. For these reasons, Koontz's email does not demonstrate that Defendant's decision to deny Mendez's claim was arbitrary, capricious, or otherwise unlawful. *Greenwood*, 2017 WL 2445535, at *4 (same).

### III. *Adjudication of Mendez's Claim*

Finally, Mendez raises a variety of assertions against the Navy's actual adjudication of his claim. First, Mendez argues that the Navy failed to apply the proper standard of review. (Doc. No. 6-1 at 16–18.) Second, Mendez contends the Navy ignored the evidence supporting his claim. (*Id.* at 24.) As explained below, neither contention has merit.

With regard to the burden of proof, Mendez argues that language in a denial letter evidence that he was required to establish entitlement to benefits under a higher burden of proof, specifically, that the injuries Mendez "suffered do not per se require assistance to perform ADLs." (Doc. No. 6-1 at 16–18.) Mendez reads this language as being the standard of review applied. (*See* Doc. No. 6-1 at 17.) The Court agrees with Judge Sabraw that "[t]his statement does not indicate Defendant applied the wrong standard of review. All it states is [Mendez's] injuries are not the type that automatically show an inability to perform ADLs." *Greenwood*, 2017 WL 2445535, at *4.

Mendez next argues there was evidence supporting his claim, and Defendant failed to consider it. (Doc. No. 6-1 at 21–24.) TSGLI claims are governed by 38 U.S.C. § 1980A and 38 C.F.R. § 9.20. 38 U.S.C. § 1980A mandates that a service member who has been injured as the result of a traumatic event and suffers a "qualifying loss" be awarded benefits under the TSGLI program. *Id.* § 1980A(a)(1), (b)(1). Qualifying losses include the inability to "independently perform" at least two out of six activities of daily living ("ADLs"):

bathing, continence, dressing, eating, toileting, and transferring in or out of bed or chair with or without equipment. *Id.* § 1980A(b)(1)(H), (2)(D); 38 C.F.R. § 9.20(e)(6)(vi). To be eligible to receive TSGLI benefits for loss of ADLs from a traumatic injury other than a brain injury, the service member must establish inability to perform the ADLs for at least 30 consecutive days. 38 C.F.R. § 9.20(f). Mendez asserts he was unable to independently bathe, dress, and toilet for more than 60 consecutive days. (AR 55–56.)

Contrary to Mendez's assertions, the record demonstrates that the Navy considered all the evidence before it. Navy personnel stated in various denials that "[a] thorough review of all available information was conducted . . . ." (AR 40; *see* AR 38, 145.) In internal memoranda, the contents of Mendez's and Nelson's affidavits were explicitly considered. (SAR 278A, 278B, 278C, 278E, 282B.) The BCNR's denial similarly references Mendez's affidavit. (AR 283–84.) What ultimately proved dispositive was the dearth of evidence as to why or how Mendez, a then-25-year-old Navy Seal, was unable to independently bathe and toilet.

Giving Mendez the benefit of the doubt, the Navy concluded he was unable to independently perform the ADL of dressing because certain aspects of dressing, "particularly tying shoes," require the use of two hands. (SAR 278B.) With regard to bathing and toileting, it is not disputed that Mendez actually received assistance with these ADLs from Nelson. (SAR 278E.) However, the record is bereft of information to support the conclusion that he *required* this assistance as opposed to having merely received it.[5] (SAR 278E.)

---

[5] Both Buckner and Burns stated that Mendez required assistance with the ADLs. (AR 11–12, 55–56, 85–86, 96, 99.) These opinions, however, were rendered at least six years after Mendez's injury. Accordingly, the Navy was entitled to give little weight to these opinions. *See Coker v. United States*, No. 3:15CV-00202-JHM, 2016 WL 7242727, at *5–6 (W.D. Ky. Dec. 14, 2016) (finding it was not arbitrary or capricious for the Army to review the service member's records itself and not defer to the certifying medical professional's opinion where that opinion was signed five years after the injury).

For example, Mendez attests to not being able to wash his back or other parts of his body by himself. (AR 89.) The corollary of this statement, however, is that he was able to wash the parts of his body that he could reach. (*See* AR 283–84.) "If the patient is able to perform the activity by using accommodating equipment (such as a cane, walker, commode, etc.) or adaptive behavior, the patient is considered able to independently perform the activity." (AR 366.) Mendez's inability to reach his back and other areas of his body is easily remedied by using a readily available "loofa on a stick." *Coker*, 2016 WL 7242727, at *6 ("Dr. Whittaker appropriately pointed out that 'devices are readily available, such as a loofa on a stick, with which the applicant could have used, one-armed, to bathe his underarms, neck, back, and legs independently.'"). (*See* SAR 278E.)

The conclusion that Mendez was unable to independently toilet is similarly unsupported by the record. It is perfectly logical for the Navy to conclude, in light of the lack of an explanation to the contrary, that Mendez would be able to "pull up a pair of sweatpants . . . with [his] uninjured limb." (AR 284.) In light of this lack of explanation, the Navy was free to give little weight to Mendez's and Nelson's "self-serving" statements.[6] *Austin v. United States*, No. SA–14–CA–277, 2014 WL 12637958, at *3 (W.D. Tex. July 7, 2014).[7]

---

[6] In *Fail v. United States*, the district court found the statement of the service member's wife that she provided "maximum help" to her husband after surgery to be "clear and unrebutted evidence that [the service member] indeed employed human assistance to perform the various ADLs during the 60-day period set forth in the statement." No. 12–cv–01761–MSK–CBS, 2013 WL 5418169, at *9–10 (D. Colo. Sept. 27, 2013). To the extent that *Fail* stands for the proposition that a relative's statement, by itself, clearly establishes entitlement to benefits, the Court disagrees with that holding. *Austin*, 2014 WL 12637958, at *3 n.4 (same).

[7] Contrary to Mendez's assertion, (Doc. No. 6-1 at 23), the record demonstrates that the Navy did not fail to consider Mendez's and Nelson's affidavits, (*see* AR 283–84, SAR 278E). Rather, the Navy found the affidavits unhelpful because they were silent on the salient issue: "[I]n the absence of [Nelson], for which of these activities would [Mendez] require a person to come into his home to assist him?" (SAR 278E.)

Having reviewed the record as a whole, the Court is not persuaded that Defendant committed a "clear error of judgment." *Marsh*, 490 U.S. at 378 (quoting *Citizens to Preserve Overton Park, Inc.*, 401 U.S. at 416). Defendant reasonably concluded that Mendez did not establish suffering a qualifying loss because he showed he was unable to perform only one ADL. The Navy "examine[d] the relevant data and articulate[d] a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43 (citing *Burlington Truck Lines v. United States*, 371 U.S. 156, 168 (1962)). Because the evidence Mendez provided did not address the key inquiry of why or how he was unable to use his uninjured hand and arm to bathe and toilet, the denial of TSGLI benefits was not arbitrary or capricious.

## CONCLUSION

Based on the foregoing, the Court **DENIES** Mendez's motion for summary judgment, (Doc. No. 6), and **GRANTS** the United States' cross motion, (Doc. No. 8). Defendant's denial of TSGLI benefits is **AFFIRMED**. This case is now **CLOSED**.

**IT IS SO ORDERED.**

Dated: August 25, 2017

Hon. Anthony J. Battaglia
United States District Judge